**Alexandria**

ANTHONY MILLER

v.

COMMONWEALTH OF VIRGINIA

No. 0859-88-4

Decided June 12, 1990

COUNSEL

James E. Mullins, for appellant.

David A. Rosenberg, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.**—Anthony Miller was convicted in a bench trial of trespass in violation of Code § 18.2-119. The sole issue on appeal is whether Code § 18.2-119 applies to an alley located on property owned by the Alexandria Development and Housing Authority (Housing Authority).[1] We find that it does and affirm Miller's conviction.

On February 7, 1988, Miller was seen walking in an alley on Housing Authority property. The ends of the buildings and the ends of the alleys on the property were posted with "No Trespassing" signs, which were plainly visible. Miller was issued a summons for trespassing pursuant to Code § 18.2-119.[2]

The alley in question is located in a part of the Housing Authority property where the alleys and courtyards have been vacated by municipal ordinance. The "No Trespassing" signs were in place prior to January 31, 1988 and were authorized by the Housing Authority. In addition, the Housing Authority had an agreement with the Alexandria police that the trespass statute would be strictly enforced on all Housing Authority property.

The Supreme Court specifically has addressed the issue of whether the trespass statute applies to publicly owned property and has decided that it does. *See, e.g., Johnson v. Commonwealth*, 212 Va. 579, 186 S.E.2d 53, *cert. denied*, 407 U.S. 925 (1972); *Jordan v. Commonwealth*, 207 Va. 591, 151 S.E.2d 390 (1966); *Miller v. Harless*, 153 Va. 228, 149 S.E. 619 (1929). Consequently, Miller does not dispute the applicability of Code § 18.2-119 to Housing Authority property. Miller argues, however, that his motion to dismiss should have been granted because he was arrested for trespassing in an alley on Housing Authority property. He asserts that the alley was a thoroughfare on public property and therefore, pursuant to the Supreme Court's holding in

---

[1] Code § 18.2-119 provides in pertinent part: "If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, . . . after having been forbidden to do so . . . by a sign or signs posted by [the owner, lessee, custodian or other person lawfully in charge thereof] . . . at a place or places where it or they may be reasonably seen . . . he shall be guilty of a Class 1 misdemeanor."

[2] A similar summons was issued to Miller on January 31, 1988. The circuit court granted Miller's motion to strike as to that charge on sufficiency grounds.

*Johnson*, not subject to the statutory prohibition of Code § 18.2-119.

We find that *Johnson* is not determinative of the issue raised by Miller and that Miller's actions were prohibited by Code § 18.2-119. In *Johnson*, the question before the court was whether former Code § 18.1-173 (now Code § 18.2-119) applied to Wilson Hall, a building on the campus of Madison College, owned by the Commonwealth.[3] The Court held that the statute applied and affirmed the trespass convictions of individuals who had participated in an unauthorized sit-in in that building.

The Court's holding in *Johnson* was based on its earlier decision in *Miller v. Harless*. In *Miller*, the plaintiffs brought a civil action seeking damages for wrongful arrest while on the grounds of Virginia Polytechnic Institute (VPI). At issue were two jury instructions offered by the defendant which had been refused by the trial court. The substance of the instructions was essentially that if the plaintiffs went on the grounds of VPI, outside of the established walkways and driveways, after being warned that such action was impermissible, they were guilty of a trespass under former Va. Code Ann. § 3338 (1928). The Court held that the instructions should have been given. *Miller*, 153 Va. at 243, 149 S.E. at 624.

In reaching its holding in *Johnson*, the Court found that there was nothing in the language of either former Code §§ 3338 or 18.1-173 to indicate a distinction in their applicability to either public or private property. *Johnson*, 212 Va. at 581, 186 S.E.2d at 55. The Court then concluded, stating: "Before our decision today, *Miller* stood for the proposition that a trespass statute like Code § 18.1-173 applies to publicly owned property other than thoroughfares. We now reaffirm that proposition." *Id.* at 582, 186 S.E.2d at 56. It is this language which Miller claims supports his position that the alley was a "thoroughfare" and not subject to the prohibitions of Code § 18.2-119.

The *Johnson* decision did not, however, define the term "thoroughfare" since the definition was not necessary to the Court's holding. Accordingly, we must now define that term in keeping

---

[3] Former Code § 18.1-173 provided in pertinent part: "If any person shall without authority of law go upon or remain upon the lands, buildings or premises of another, . . . after having been forbidden to do so . . . by the owner, lessee, custodian or other person lawfully in charge thereof, . . . he shall be deemed guilty of a misdemeanor. . . ."

with the law governing trespass. The only specific guidance on the meaning of the term is the language contained in the jury instructions in *Miller v. Harless*. Although the plaintiffs had been arrested for trespassing in an alfalfa field on the campus of VPI, the instructions upheld by the Court defined trespass as being on the grounds of VPI "outside of the established walkways and driveways." Thus, it is arguable that the Court in *Johnson* clearly intended the word "thoroughfare" to include the established walkways and driveways on a state college campus.

In a trespass case decided subsequent to *Miller*, the Court upheld a conviction under former Code § 18.1-173, where the defendant was arrested after he was seen running on property adjacent to a government building which had been conspicuously marked with "No Trespassing" signs. *Jordan*, 207 Va. at 596, 151 S.E.2d at 390. Two years later, the Court determined that former Code § 18.1-365, which contained language similar to former Code § 18.1-173, did not apply to a public street. *Price v. Commonwealth*, 209 Va. 383, 387, 164 S.E.2d 676, 679 (1968).[4]

■ Based on these decisions, we hold that the term "thoroughfare," as used by the Court in *Johnson*, is limited to those ways or passages designated for general public access. Consequently, the mere fact that the alley was located on Housing Authority property is not sufficient to establish that the alley retained the requisite public character sufficient to exempt it from the mandate of Code § 18.2-119.

The alley was government property and had been clearly marked to deter trespassing. Further, the Housing Authority had an express agreement with the police to enforce this policy, demonstrating its intent to restrict access to the alley and not open it to the general public. In addition, the alleys and courtyards in the surrounding area, including the alley in which Miller was walking, had been vacated by municipal ordinance. The alley was therefore distinguishable from the public street referred to in *Price*, and from the driveways and walkways open to the public on the VPI campus referred to in *Miller*.

---

[4] After the Court's decision in *Price*, the legislature amended Code § 18.1-365 to include both public and private property.

We find that the alley in question was not intended for public use, and therefore was not a "thoroughfare" as described in *Johnson.* Thus, Code § 18.2-119 operated to bar Miller's use of the alley. Accordingly, we affirm the judgment of the trial court.

*Affirmed.*

Moon, J., concurred.

Benton, J., dissenting.

The trespass statute in effect on the dates of Anthony Miller's arrests for trespassing in an alley states in pertinent part as follows:

> If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian or other person lawfully in charge thereof, or after having been forbidden to do so by a sign or signs posted by such persons or by the holder of any easement or other right-of-way authorized by the instrument creating such interest to post such signs on such lands, structures, premises or portion or area thereof at a place or places where it or they may be reasonably seen . . . [that person] shall be guilty of a Class 1 misdemeanor.

Code § 18.2-119.

The statement of facts succinctly outlines the circumstances concerning the two occasions on which Miller was arrested:

> Officer D. K. Serven of the Alexandria Police Department . . . testified that on January 31, 1988, about . . . "0627am," he observed [Miller] in the company of another person walking through the alleys and courtyards of the property of Alexandria Redevelopment, located on the west side of 800 block of N. Alfred St. He testified that there were "No Trespassing" signs posted by Alexandria Redevelopment and Housing Authority on the ends of the buildings and at the ends of the alleys, which were plainly visible. He testified that when [Miller] was stopped, [Miller] said that he lived at 410 N. Alfred St., and was in the area looking for a check. Officer Serven identified a map of the area, admit-

ted without objection, and traced the route [Miller] took on the day in question. He also stated that he did not observe [Miller] making any noise or acting in a disorderly manner. . . . Officer Serven [also] testified that he had observed [Miller] in the area of the 800 to 900 blocks of N. Alfred Streets, prior to midnight on February 7, 1988. He testified that he observed [Miller] engage in a conversation with another person who was seated in a parked car, although he could not hear any of the conversation. He then testified that [Miller] left the vicinity of the car, walked down the sidewalk and walked through the alley behind the 900 block of Madison St., the property of Alexandria Redevelopment and Housing Authority. He testified that there were visible "No Trespassing" signs at the ends of the alley through which [Miller] passed. He testified that [Miller] was alone, and was not making noise or acting in a disorderly manner, or doing anything illegal that he could observe, other than walking through the alley. [Miller] was stopped as he exited the alley, and was arrested. Officer Serven said [Miller] gave no reason for his presence in the alley.

On these facts the trial judge acquitted Miller of the charge of trespass for the incident which occurred on January 31. That acquittal was mandated because the evidence did not establish that prior to January 31 Miller had been forbidden to walk in the alley. Moreover, the posting of "No Trespassing" signs did not reasonably warn that the alley was not a public thoroughfare. These same reasons compel a conclusion that the February 7 conviction for trespass must be set aside.

I disagree with the majority's conclusion that an alley is distinguishable in some significant manner from the public streets, driveways, and walkways. Alleys and alleyways have always been thought of as thoroughfares. The term "alley" is commonly defined to be "a passageway between buildings; a lane wide enough only for persons on foot: a narrow street wide enough for only one vehicle[;] a thoroughfare through the middle of a square or block giving access to the rear of lots or buildings." Webster's Third New International Dictionary 56 (1986). Alleys have an apparent public characteristic, similar to sidewalks and streets. The evidence did not establish that the alleys at issue in this case are

somehow atypical.

I agree with the majority that the evidence established that the alley in which Anthony Miller was walking had been "vacated by Ordinance 752 of the City of Alexandria." Although the ordinance is not in the record, presumably the alley was no longer owned and maintained by the City of Alexandria. However, the alley was vacated to another political subdivision of the Commonwealth, the Alexandria Redevelopment and Housing Authority. *See* Code § 36-3(a). The Housing Authority is statutorily authorized to own and maintain land, streets, and alleys in connection with its mandate "to provide decent, safe and sanitary . . . accommodations for persons of low income." Code § 36-3(i). Thus, standing alone, the city's act of vacating the alley neither deprived the alley of its "public" character nor converted it into something other than a "thoroughfare."

Although the trespass statute has been held to apply to publicly owned property, "thoroughfares" were exempted from that holding. *Johnson v. Commonwealth*, 212 Va. 579, 582, 186 S.E.2d 53, 55, *cert. denied*, 407 U.S. 925 (1972); *see also Price v. Commonwealth*, 209 Va. 383, 388, 164 S.E.2d 676, 680 (1968); *Miller v. Harless*, 153 Va. 228, 242, 149 S.E. 619, 623 (1929). That exemption exists because the term "premises" ordinarily does not apply to city streets and other thoroughfares. *Price*, 209 Va. at 388, 164 S.E.2d at 680. "[U]se of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights and liberties of citizens.".*Hall v. Commonwealth*, 188 Va. 72, 88, 49 S.E.2d 369, 377 (1948)(quoting *Hague v. Committee for Indus. Org.*, 307 U.S. 496, 515 (1939)).

When Miller was arrested, signs with the warning "No Trespassing" were posted on the ends of buildings and at the ends of the alleys. The alleys are found throughout the housing development and connect parallel streets. While the record is silent with respect to the design of the houses in the development, I believe that it can be reasonably inferred from the map that most, if not all, of the houses that border the alleys have outside doors that lead to an alley. Certainly, where the Housing Authority is attempting to forbid passage over an alley that indisputably once was a public thoroughfare, more notice is required to warn the public than a simple statement "No Trespassing." Such signs do not reasonably inform persons that alleys and other thoroughfares

that cross the lands of the Housing Authority are not open to visitors or other travelers. A sign which states "No Trespassing" obviously would be ineffective to give notice that the sidewalks and streets that traverse the several blocks of housing are not open to the general public as they walk, jog, bicycle, skate, drive, or generally wander about.

Although the January arrest of Miller might suggest that his state of knowledge may have been different on February 7, the evidence contains no indication Miller was warned by the arresting officer in January of the nature of the violation or that Miller was ever informed that the alley was closed to the public. The summons that was issued to Miller following his arrest on January 31 merely recites "trespassing" and gives the location of the offense as "800 Blk N. Alfred St." This evidence does not meet the requirement of proof beyond a reasonable doubt of the elements of the offense. *Sargent v. Commonwealth*, 5 Va. App. 143, 148, 360 S.E.2d 895, 898 (1987); *see also Reed v. Commonwealth*, 6 Va. App. 65, 70-71, 366 S.E.2d 274, 278 (1988).

Because the general warning, "No Trespassing," provides insufficient notice to persons that an alleyway which was once a public thoroughfare has been closed to the public, I would reverse and dismiss Miller's February trespass conviction.