## Salem

JOHN F. BANKS

v.

COMMONWEALTH OF VIRGINIA

No. 0305-92-3

Decided August 31, 1993

COUNSEL

Joseph A. Sanzone (Paul Whitehead Associates, on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BARROW, J.**—In this criminal appeal, we must decide whether the trial court erred in excluding evidence of illegal activities of an undercover police agent during his investigation. We hold that the trial court should have admitted this evidence because, if believed, it shows a motive for the undercover agent to have fabricated his testimony against the defendant.

Lynchburg police arrested the defendant, along with others, at the end of a six-month undercover narcotics operation in July, 1991. He was charged with selling crack cocaine to an ABC Board Special Undercover Agent named Frances "Sweets" Barnwell on two separate occasions in April, 1991.

Before trial, the Commonwealth filed a motion in limine seeking to exclude the testimony of four defense witnesses and to limit the cross-examination of Barnwell. These witnesses would testify that Barnwell himself illegally distributed drugs during the course of the undercover operation. The trial judge sustained the Commonwealth's motion, stating that "the specific acts of misconduct on the part of Officer Barnwell proffered [by the defendant] cannot be shown to the jury."

The defendant then proffered the testimony of the four witnesses. The transcript testimony of a fifth witness, who had testified at a hearing for another defendant arrested in Operation Crackdown, was also offered for the record.

The first witness, a woman, testified that she met Barnwell in January, 1991. She testified that Barnwell bought crack cocaine and gave it to her in exchange for sexual favors on the average of three times a week. Their relationship ended in April, 1991, when Barnwell began seeing another woman. The witness testified that, although Barnwell, whom she knew as ''Sweets,'' supplied drugs to her, she never actually saw him use, buy or sell illegal drugs. She also testified that she was not sure of the specific dates when any of these acts occurred.

The second witness testified that he was introduced to ''Sweets'' Barnwell by the first witness in the middle of the winter of 1990-91. He testified that Barnwell gave him crack cocaine ''on several occasions'' starting in or around March, 1991. He also testified that he witnessed Barnwell sell drugs to other people on thirty-five or forty occasions beginning in May or June, 1991. He testified that Barnwell usually had about $200 worth of crack cocaine on these occasions. He said that Barnwell would usually make the prospective buyer use some of the cocaine before selling it to him or her, to make sure the buyer was not working for the police. The second witness admitted that he was ingesting crack cocaine during this time ''on an everyday basis'' and said that ''dates didn't mean nothing to me at the time [because] I had no reason to try to keep up with the dates.''

In her proffered testimony, a third witness stated that she met ''Sweets'' Barnwell through the first witness ''approximately [the] beginning of April'' or ''around the end of May [1991].'' She testified that the first time they met, Barnwell gave her some crack cocaine to smoke free of charge. On one occasion, he gave her cocaine and money in exchange for sex. This witness also testified that she bought drugs from Barnwell on another occasion. She also testified that, on five or six occasions, she saw one of Barnwell's girlfriends sell drugs for him while he was present. She admitted that she could not remember any of the dates when these transactions occurred, and stated that she was using crack on a daily basis throughout this period of time.

A fourth witness testified that she first met Barnwell about three weeks prior to the arrests which occurred at the culmination of

Operation Crackdown in July 1991. She stated that she saw Barnwell buy and sell cocaine approximately eight times, and that he kept his girlfriend supplied with crack cocaine on a constant basis. This witness also testified that Barnwell gave her cocaine "maybe 25" times as well.

The transcript testimony of a witness in another proceeding was also introduced. This fifth witness had testified that she was the sister of one of Barnwell's girlfriends, and that she first met Barnwell in the summer of 1991. She testified that she once saw her sister buy drugs for Barnwell while he was present. She also testified that she had seen Barnwell sell drugs, and that she had purchased drugs from him that summer.

At trial, Barnwell testified that he purchased $100 worth of crack cocaine from the defendant on two separate occasions in April, 1991. Although two police officers testified that Barnwell turned over crack cocaine to them on both occasions and gave them a description of the defendant, no witness said that he or she actually saw Barnwell purchase cocaine from the defendant. A defense witness, whom Barnwell testified was present when one of the purchases was made, denied ever seeing the defendant and Barnwell together and specifically denied seeing Barnwell purchase cocaine from him. The defendant took the stand and also denied selling cocaine to Barnwell.

At the conclusion of the defendant's evidence, the trial court found the defendant guilty of both charges of distributing cocaine. This appeal followed.

The right to cross-examine prosecution witnesses to show bias or motivation to fabricate, when not abused, is absolute. *Barker v. Commonwealth*, 230 Va. 370, 376, 337 S.E.2d 729, 733-34 (1985); *Hewitt v. Commonwealth*, 226 Va. 621, 623, 311 S.E.2d 112, 114 (1984). "One purpose of cross-examination is to show that a witness is biased and his testimony unreliable because it is induced by considerations of self-interest." *Barker*, 230 Va. at 376, 337 S.E.2d at 733. "Inquiries of this nature are always relevant, and the factfinder should consider the evidence of bias and motivation in assigning the weight to be accorded to the testimony of the witness." *Speller v. Commonwealth*, 2 Va. App. 437, 443, 345 S.E.2d 542, 546 (1986). *See also Largin v. Commonwealth*, 215 Va. 318, 320, 208 S.E.2d 775, 777 (1974) (holding that trial court did not err in allowing

Commonwealth to bolster prosecution witness' credibility by presenting evidence that defendant was the father of witness' child); *Woody v. Commonwealth*, 214 Va. 296, 298-99, 199 S.E.2d 529, 531 (1973) (holding that trial court erred in refusing to allow defendant to show possible bias of prosecution witnesses by presenting evidence that witnesses had been involved in other unrelated crimes for which they had not been indicted); *Henson v. Commonwealth*, 165 Va. 821, 825-26, 183 S.E. 435, 437 (1936) (trial court did not err in allowing testimony that a defense witness had attempted to persuade another witness to drop a complaint she made against the defendant in an unrelated case); *Turner v. Commonwealth*, 13 Va. App. 651, 653-54, 414 S.E.2d 437, 438 (1992) (holding that the trial court erred by refusing to allow defendant to present evidence that the victim had offered to drop the charges in exchange for $5,000).

■ Evidence of a crime or other act related to the offense is distinguishable from "independent crimes unconnected with the offense for which the defendant [is] being tried." *Adams v. Commonwealth*, 201 Va. 321, 326, 111 S.E.2d 396, 399 (1959) (holding that evidence that defendant in manslaughter case committed adultery with the victim's wife is admissible). Evidence of a crime or act that relates directly to the credibility of a witness and the weight that should be given to his or her testimony is admissible. *Id.* at 326, 111 S.E.2d at 399-400.

■ Evidence of specific acts of misconduct is generally not admissible in Virginia to impeach a witness' credibility. *Clark v. Commonwealth*, 202 Va. 787, 789-90, 120 S.E.2d 270, 272 (1961). However, where the evidence, as here, is relevant to show that a witness is biased or has a motive to fabricate, it is not collateral and should be admitted. "[A]ttempting to introduce evidence of prior misconduct, for which there has been no criminal conviction, to impeach a witness' general character for truthfulness differs from attempting to introduce such evidence to show that a witness is biased or motivated by self interest in a particular case." *Commonwealth v. Shands*, 338 Pa. Super. 296, 302, 487 A.2d 973, 976 (1985). Courts in other jurisdictions follow this principle and admit evidence of specific acts of misconduct to impeach a witness when such evidence is relevant to show bias or motivation to fabricate. *Id. See, e.g., United States v. Rios Ruiz*, 579 F.2d 670, 672-74 (1st Cir. 1978); *United States v. Miles*, 480 F.2d 1215, 1217 (2d Cir. 1973); *Dunbar v. Alaska*, 677 P.2d 1275, 1281 (Alaska Ct. App. 1984); *People v. Allen*, 144 Cal. Rptr. 6, 10-11 (1978). *See also* Annotation, *Right to Impeach Witness*

*in Criminal Case by Inquiry or Evidence as to Witness' Criminal Activity Not Having Resulted in Arrest or Charge — Modern State Cases*, 24 A.L.R.4th 333, 397 (1983).

If believed, the trier of fact could reasonably infer from the defendant's proffered evidence that Barnwell had a strong motive to implicate the defendant in order to conceal his own alleged drug-dealing activities. If Barnwell was distributing controlled substances as claimed by the defendant's witnesses, he may have falsely accused the defendant in order to distract the police from suspecting that he was, in fact, distributing drugs, to persuade the police that he was not doing so, or to gain immunity from them for his own misdeeds. The testimony of the defendant's witnesses is, therefore, relevant to show Barnwell's bias and motivation to fabricate and should have been admitted.

Finally, the Commonwealth asserts that the defendant raises certain arguments about the admissibility of the excluded evidence on appeal that were never presented to the trial court and are, therefore, barred by Rule 5A:18 on appeal. We disagree. The defense counsel told the trial court that the evidence was admissible to impeach Agent Barnwell's credibility, to show that the drugs Barnwell claims he purchased from defendant may have come from a source other than the defendant, and to show that Barnwell was maintaining various women on drugs. While the defense counsel's reasons for admitting the evidence could have been explained more completely, they were sufficiently broad to have given the trial court notice of the substance of the reasons. *See Overton v. Slaughter*, 190 Va. 172, 179, 56 S.E.2d 358, 362 (1949). In rejecting the defendant's proffered evidence because it represented "specific instances of misconduct," the trial court addressed, although incorrectly, the issue raised in this appeal.

The evidence concerning Barnwell's allegedly improper activities during the course of the undercover operation was relevant to show his possible bias and motive to fabricate and, thus, should have been admitted. Accordingly, the judgments of conviction are reversed and the cause is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Moon, C.J., and Koontz, J. concurred.