COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Alston and Decker
Argued at Richmond, Virginia

UNPUBLISHED

EMMANUEL ARTIS

MEMORANDUM OPINION[*] BY
JUDGE MARLA GRAFF DECKER
SEPTEMBER 23, 2014

v.        Record No. 0198-13-2

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Pamela S. Baskervill, Judge

Andrew T. Bodoh (Thomas H. Roberts; Thomas H. Roberts &
Associates, P.C., on briefs), for appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Emmanuel Artis was convicted of trespass in violation of Code § 18.2-119. On appeal,

he contends that the evidence was insufficient to prove that an authorized person excluded him

from the headquarters building of the Petersburg Bureau of Police. He further avers that the trial

court erroneously excluded a video recording. Finally, he argues that the public areas of the

headquarters property were not covered by Code § 18.2-119 and that the trial court erred in

refusing his proffered jury instruction on this legal principle. We hold that the evidence was

sufficient to prove that an authorized person barred the appellant from the headquarters property.

However, we also conclude that the trial court erred in excluding the video recording, which was

relevant to the fact finder's determination of whether the Commonwealth's witnesses were

biased against the appellant. We further hold that this error was not harmless. Lastly, we

conclude that the trial court erred in rejecting the contention that whether the appellant was on a

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

public thoroughfare, a type of property excluded from Code § 18.2-119, was a question for the jury based on the facts of this case. Consequently, we reverse the appellant's conviction and remand the case for further proceedings consistent with this opinion if the Commonwealth be so advised.

## I. BACKGROUND

In the early morning hours of Sunday, April 1, 2012, the appellant was arrested for trespassing at the headquarters building of the Petersburg Bureau of Police, property owned by the City of Petersburg. The appellant entered the public area of the headquarters building at around 4:30 a.m. in order to lodge a complaint about alleged police corruption. It was undisputed at trial that officers responded to a dispatch regarding the appellant's complaint. Other evidence regarding the appellant's arrest was disputed.[1]

The Commonwealth's evidence was that the appellant interacted with the dispatcher and shift commander in the headquarters public lobby and on the landing just outside the building. Dispatcher Karen Richardson testified that the appellant entered the lobby and asked specifically to speak to a captain. According to Richardson, because no captain was on duty, she entered a call for service requesting a sergeant. She said that although the appellant spoke calmly and quietly to her, he was pacing and seemed agitated. Richardson testified that the appellant spoke with at least one officer in the lobby but she did not recall the identity of the officer.

Detective Sergeant Jason Sharp was the first person to respond to the call for service. Sharp testified that he was the officer responsible for the portion of the city in which the headquarters building was located and for the officers assigned to patrol that area. Sharp met the

---

[1] In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth. See infra Part II.A. However, in reviewing admissibility, harmless error, and jury instruction issues, different standards apply. See infra Part II.B-C. Consequently, this summary of the evidence delineates the relevant points upon which the parties' evidence differed.

appellant in the lobby within two minutes of receiving the call. The appellant told Sharp that he wanted to make a complaint against a police officer. Sharp explained the process for filing a complaint and offered the appellant the necessary paperwork. The appellant became disruptive, used profanity, and refused to calm down, "yelling something like, you . . . are just going to team up on me anyways." Based on the appellant's ongoing disruptive behavior, Sharp ordered him to leave headquarters property or be arrested for trespassing.

Sharp further testified that around that time, Officer Dillard, one of the patrol officers under his command on the midnight shift, came from the interior headquarters area. Dillard joined them in the lobby and "exchanged conversation" with the appellant. Sharp testified that he again instructed the appellant to leave the building but that the appellant went only as far as the patio area just outside the public entrance and refused to leave. Sharp directed Dillard to arrest the appellant and watched as Dillard did so. Sharp testified without equivocation that the appellant was on the patio at the time of the arrest. He also acknowledged that he knew by the time of the appellant's arrest that Dillard was the officer about whom the appellant had come to the police station to complain.

The appellant did not dispute that it was Officer Dillard who arrested him. However, he presented evidence that in the moments leading up to the arrest, he interacted not with Sergeant Sharp but with Officer W.L. James. He also contended that this interaction occurred in the parking lot rather than the lobby or patio area. Officer James, called by the defense as a hostile witness, testified that on the morning of the appellant's arrest, he was at headquarters when he received a call over the police radio about an individual in the parking lot. He went immediately on foot to the parking lot and encountered the appellant. According to James, he attempted to engage the appellant in conversation in order to "[t]actfully . . . calm him down." The appellant told James that he wanted to speak to a captain immediately about "police corruption." No

- 3 -

captain was on duty at that time, and James thought that the appellant "needed to talk to someone a lot higher than a sergeant." Consequently, James told the appellant that he should come back during business hours on Monday. James advised the appellant that if he wanted to take immediate action, he could file a written complaint at the front desk at headquarters, but the appellant insisted that he wanted to speak to a captain.

James further testified that he asked the appellant to leave numerous times during their exchange but his statements to the appellant were merely "recommendation[s]." He specifically disclaimed "order[ing]" the appellant to leave. James stated that once Dillard pulled up in his vehicle, James "stepped back from the situation." According to James, Dillard spoke with the appellant briefly and then, "on his own initiative from the appearances of it," arrested the appellant. James remembered "the important things that were told to [the appellant], . . . what he was instructed to do," but James gave no indication that Officer Dillard said anything to the appellant about trespassing. When asked if "any other officers [were] near [the appellant] right before his arrest," Officer James did not mention Sergeant Sharp.

The appellant also elicited testimony from Dispatcher Richardson that at some point that morning, the appellant was in the headquarters parking lot saying that he had "footage of corruption [and that he] just got thrown out of [a Petersburg nightclub]." She also noted that the appellant "ma[de] threats against the police department," demanded to see a captain, and did not believe that there was no captain on duty.

The appellant defended the trespassing charge on numerous grounds. He contended that he was not barred from the headquarters property by an authorized person prior to his arrest. He also argued that the arrest occurred on a part of the property that was a public thoroughfare and, therefore, was not covered by the trespass statute. He attempted to enter into evidence a video recording of an earlier encounter between him and several police officers. He indicated that the

- 4 -

alleged encounter served as the basis for his presence at police headquarters to lodge a complaint. He argued that the video showed the bias of the police officers against him as well as his good-faith belief that he had a right to remain on headquarters property to report the earlier incident. The trial court ruled that the video was not relevant and refused to admit it. The court instructed the jury on the appellant's good-faith claim of right. However, it refused his proffered instruction regarding whether the area he occupied was a public thoroughfare that was not subject to the trespassing statute.

The jury found the appellant guilty of trespassing. At sentencing, the appellant testified about his version of events that had occurred at the Cockade Grill in the hours prior to his arrest at police headquarters. He explained that he provided free "video production" for clubs. He stated generally that he had been having problems with the Petersburg police since 2007. The appellant said that since that time, he had worked on occasion with a group of people to conduct video "surveil[lance of] police officers [reportedly engaged in] corruption[]" but that "[m]ost of [the time], [he] just ke[pt] a camera [with him] and stuff happen[ed]." According to the appellant, he and the group routinely posted online their video recordings of police activity. He testified that on the evening at issue, as he was leaving the Cockade after video recording a band, a group of six or seven police officers attempted to keep him from departing on foot. The appellant claimed that these officers followed him with their hands on their weapons and threatened to arrest him for walking in the street and on a public sidewalk. He explained that this was the incident about which he had gone to police headquarters to complain immediately prior to his arrest for trespassing there.

The jury returned a sentencing verdict recommending a $300 fine. The trial court sentenced the appellant in accordance with the jury's verdict.

## II. ANALYSIS

### A. *Sufficiency of the Evidence*[2]

The appellant contends that the evidence failed to prove that he was excluded from the property by a proper party under Code § 18.2-119. This issue presents a mixed question of law and fact. The interpretation of a statute is a question of law, which we review *de novo* on appeal. Baker v. Commonwealth, 278 Va. 656, 660, 685 S.E.2d 661, 663 (2009). However, in reviewing factual issues, we defer to the fact finder unless its findings are plainly wrong or without evidence to support them. Wilson v. Commonwealth, 272 Va. 19, 27, 630 S.E.2d 326, 330 (2006).

Code § 18.2-119 provides:

> If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian, or the agent of any such person, or other person lawfully in charge thereof . . . , he shall be guilty of a Class 1 misdemeanor.

Under accepted principles of statutory construction, we look to the words contained in a statute to determine the General Assembly's intent. Elliott v. Commonwealth, 277 Va. 457, 463, 675 S.E.2d 178, 182 (2009). "When the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated." Id.; see Hunter v. Commonwealth, 56 Va. App. 50, 56-57, 690 S.E.2d 792, 795 (2010). Additionally, Code § 18.2-119, like all penal statutes, must be "strictly construe[d] . . . and limit[ed] . . . to cases

---

[2] We consider the appellant's sufficiency argument first because his challenge to the sufficiency of the evidence, if successful, would moot his challenges to the evidentiary and jury instruction issues. See, e.g., McDaniel v. Brown, 558 U.S. 120, 131 (2010) (*per curiam*); Lockhart v. Nelson, 488 U.S. 33, 40-41 (1988); Wilder v. Commonwealth, 55 Va. App. 579, 596 n.7, 687 S.E.2d 542, 550 n.7 (2010).

falling clearly within [it]." Farrakhan v. Commonwealth, 273 Va. 177, 181, 639 S.E.2d 227, 230 (2007).

The contested element concerns whether a proper person—"the owner, lessee, custodian, or the agent of any such person, or other person lawfully in charge [of the premises at issue]"—forbade the appellant from remaining on the police headquarters property. The jury was instructed, without objection, that the Commonwealth was required to prove "that Mr. Artis had been forbidden to ['remain on the premises of another'] orally or in writing *by an authorized individual*." (Emphasis added). Therefore, the "authorized individual" language became the law of the case, binding the parties and this Court on review. See, e.g., Wagoner v. Commonwealth, 63 Va. App. 229, 248-49, 756 S.E.2d 165, 175 (2014). Nevertheless, nothing in the instruction required the authorization to be explicit, and the question of who qualifies as an "authorized individual" may be informed by the language in the statute, including its reference to the owner, custodian, his or her agent, *or any other person "lawfully in charge."* Code § 18.2-119 (emphasis added).

Under settled principles, "the city police [department]" is "the law enforcement arm of the local government," a municipal corporation. Holland v. Commonwealth, 28 Va. App. 67, 72, 502 S.E.2d 145, 147 (1998) (discussing the source and scope of municipal power); see Code § 15.2-1704 (setting out the broad authority of local police forces to prevent and detect crime, safeguard life and property, and preserve the peace). Further, "bodies corporate . . . can act only through [their] duly authorized agents . . . and employees," to whom they "must delegate responsibility for the[ir] day to day operation." Pleasants v. Commonwealth, 214 Va. 646, 649, 203 S.E.2d 114, 116 (1974) (discussing the operation of school boards). Whether a contract existed between a corporate entity and someone purporting to be authorized to act on the entity's behalf is a factor to be considered along with other facts and circumstances bearing upon the

question of that authority.  See Drake v. Livesay, 231 Va. 117, 121, 341 S.E.2d 186, 188-89 (1986) (addressing authority in the agency context); Bloxom v. Rose, 151 Va. 590, 598-600, 144 S.E. 642, 644-45 (1928) (presuming the establishment of an agency agreement based on a course of conduct).  Whether an individual was "authorized" or "lawfully in charge" for purposes of Code § 18.2-119 is a question of fact.  See Drake, 231 Va. at 121, 341 S.E.2d at 189.

The evidence, viewed under the proper standard, established that the City of Petersburg owned the police headquarters property.  Sergeant Sharp testified that he was employed by the Petersburg Bureau of Police as a detective sergeant and was working in that capacity in the headquarters building at the time of the appellant's arrest.  Additionally, he stated that he was "the northwest precinct commander" during that shift.  He explained that this meant that he was "responsible for" the particular portion of the city that included the police headquarters property.  Evidence that Sharp was the most senior employee specifically assigned authority over the premises qualified him as a custodian of the property and was sufficient to support a finding that he was an "authorized individual" who was "lawfully in charge" for purposes of forbidding the appellant to remain on the headquarters property.

The appellant contends that because neither Sergeant Sharp nor Officer James could identify any policy or ordinance that authorized them to exclude an individual from police headquarters property, the jury was not permitted to find that he had been forbidden to remain upon the property as required for a conviction under Code § 18.2-119.  However, neither the express language of the statute nor any other controlling statutory or common-law principles require authorization by ordinance or departmental policy.  See Pleasants, 214 Va. at 648-49, 203 S.E.2d at 116 (concluding that a principal's express authority to administer the school and maintain discipline provided him with the inherent power to ban disruptive students from school property).  Thus, we hold that for purposes of Code § 18.2-119, appropriate police department

officials, who are employees of the city, had inherent lawful authority over headquarters premises, which is city property under the direct custody and control of the city's law enforcement arm. We further hold that the evidence supported a finding that Sergeant Sharp was in a position to exercise that inherent authority during the time at issue.

Finally, the appellant points to Code § 15.2-1717.1, which permits an individual locality to enact an ordinance establishing a procedure "whereby the owner, lessee, custodian, or person lawfully in charge" of real property may, in writing, designate the local law enforcement agency as a "'person lawfully in charge of the property'" under Code § 18.2-119 "for the purpose of forbidding another to go or remain upon" the premises. He argues that absent such an ordinance and written designation, the Petersburg Bureau of Police lacked authority to forbid him from going or remaining upon the headquarters property. To the contrary, we hold that the plain language of the statute provides a method for granting authority to local law enforcement to exclude individuals from going or remaining upon property over which that local law enforcement agency would not *otherwise* have control under Code § 18.2-119. See, e.g., Thomas v. Commonwealth, 59 Va. App. 496, 500, 720 S.E.2d 157, 159-60 (2012) (providing that statutes should be given their plain meaning and that those involving the same subject matter should, if possible, be construed together and harmonized). As we have already determined, senior police department officials had inherent authority over police headquarters property for purposes of Code § 18.2-119. Consequently, no express written authorization of the type addressed in Code § 15.2-1717.1 was required.

The evidence, viewed under the proper standard, supports the finding that an authorized individual, within the meaning of Code § 18.2-119, forbade the appellant from remaining on the police headquarters property. Accordingly, we hold that the evidence was sufficient to support the challenged element of the offense.

*B. Exclusion of the Video Recording*

The appellant argues that the trial court's exclusion of the video recording of the incident that occurred between him and numerous police officers outside the Cockade Grill several hours before his trespass arrest was error. He represents that this prior incident outside the club provided the basis for the complaint he was attempting to lodge when he refused to leave the police headquarters property. He contends that the circumstances surrounding this incident were relevant to prove both that the Commonwealth's witnesses were biased against him and that he acted in good faith in refusing to leave the headquarters property. The video, which the appellant proffered for the record, is about two-and-a-half minutes long and of poor video and audio quality. Nevertheless, as discussed *infra*, the exhibit contains some evidence that arguably could support the appellant's claim of bias and should have been admitted.

1. Preservation

The Commonwealth argues that the appellant failed to preserve this assignment of error for appeal insofar as it relates to a claim of bias by Sergeant Sharp. According to the Commonwealth, the appellant's argument "failed to link the earlier encounter [that the appellant] had with police officers in any meaningful way to his later interaction with [Sergeant] Sharp," the prosecution's key witness at trial. We conclude, based on the record, that the appellant adequately preserved this assignment of error for appeal.

Under settled principles, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated *with reasonable certainty* at the time of the ruling . . . ." Rule 5A:18 (emphasis added). "The same argument must have been raised, with specificity, at trial before it can be considered on appeal." Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004), aff'd on other grounds, 269 Va. 3, 607 S.E.2d 119 (2005). The purpose of this requirement is twofold: It "'afford[s] the trial court an

- 10 -

opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.' . . . '[It also] gives the opposing party the opportunity to meet the objection at that stage of the proceeding.'" Scialdone v. Commonwealth, 279 Va. 422, 437, 689 S.E.2d 716, 724 (2010) (quoting Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991)).

At trial, the appellant attempted to cross-examine Sergeant Sharp regarding his knowledge of the incident in which some of his officers were called to the Cockade Grill earlier on the evening of the appellant's arrest. He claimed that the line of questioning concerned the incident about which the appellant later went to the police station to make a complaint, which, in turn, led to his arrest for trespassing. He described this as an incident during which, "essentially[,] . . . he was kicked off a public sidewalk by five officers in uniform." He argued that the incident was relevant because "it establishe[d] what he was [at police headquarters] to complain about" and "look[ed] at what [Sergeant Sharp's] role was in relation to that earlier incident [at the Cockade Grill]."[3] The appellant clarified that if Sergeant Sharp was "involved" in this prior incident, presumably as a supervisor, then that fact might "impeach [Sharp's] testimony as he would be basically passing judgment on the individual that [was at police headquarters] to complain about his conduct." The trial court sustained the Commonwealth's objection and refused to permit the appellant to explore that issue while cross-examining Sharp.

Later, in his own case-in-chief, the appellant expressed an intent to call Officer Dillard to introduce a video recording of the incident at the Cockade Grill. The Commonwealth argued that the court had already ruled on that question, and the trial court inquired, "Right. Why would it be different?" Counsel for the appellant added to his earlier arguments, contending that the video "shows the *bias and prejudice of the police station generally* against [the appellant]

---

[3] The appellant did not allege that Sergeant Sharp was present at the Cockade Grill. Sharp's alleged involvement, instead, was limited to supervising one or more of the officers present.

through statements made in that video." (Emphasis added). Counsel elaborated regarding what the video would show and how it was relevant. He proffered that it depicted five uniformed Petersburg police officers "kick[ing] [him] off a public sidewalk" and then "continually telling him that they [were] going to arrest him for trespassing or for obstructing a sidewalk as he [was] walking down the sidewalk." Counsel emphasized that later in the evening, under the Commonwealth's theory of the case, Sergeant Sharp also attempted to exclude the appellant from the police headquarters property both before and after Officer Dillard arrived.

The record shows that the appellant's objections at trial encompassed the claim that the video was relevant to prove a particular police department employee like Sergeant Sharp, whether or not he appeared in the video, might be biased when *testifying* about the later incident at headquarters. As discussed in detail, *infra*, in Part II.B.2., the ability of a party to prove bias for impeachment purposes is "a fundamental feature" of Virginia's Rules of Evidence. When the appellant made his broad statement that the video would demonstrate "bias and prejudice of the police station generally," he had already explained to the court that Officer Dillard was "actually present and . . . seen on the video." In addition, Sergeant Sharp had testified that he supervised Officer Dillard and knew that Dillard was the subject of the appellant's attempted complaint.

Further, the appellant's argument that Sharp's involvement in any way in the incident captured on the video could provide a basis for impeaching him was sufficient to encompass Sharp's involvement as the supervisor of the officers depicted in the video even though Sharp was not physically present at the Cockade. Consequently, the appellant's objection was sufficiently specific and made with "reasonable certainty" to preserve the issue of Sergeant Sharp's potential bias and its possible impact on his trial testimony.

## 2. Merits

The appellant argues that the trial court's exclusion of the video was error because it was relevant to the jury's determination of whether the Commonwealth's witnesses, particularly Sergeant Sharp, were biased against him and whether he acted in good faith in refusing to leave the police headquarters property.[4] We agree that the video was admissible to show bias.

An appellate court reviews a trial court's decision regarding the admissibility of evidence for an abuse of discretion. Gonzales v. Commonwealth, 45 Va. App. 375, 380, 611 S.E.2d 616, 618 (2005) (*en banc*). "In reviewing an exercise of discretion, we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." Beck v. Commonwealth, 253 Va. 373, 385, 484 S.E.2d 898, 906 (1997). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).

Evidence relating to a point properly at issue in a case is relevant and, therefore, admissible if it has "any logical tendency, however slight," to establish that point. Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993). If this threshold of relevance is met and admission does not violate some other legal rule, the evidence should be

---

[4] At oral argument, counsel for the Commonwealth candidly admitted that if the bias prong was not procedurally barred, he could not advance a legitimate argument that the appellant's claim was incorrect. He further candidly represented that if the exclusion of the video was error, he could not argue that it was harmless.

An appellate court may not accept even formal concessions of law without independently confirming their correctness. See Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*). Nevertheless, such admissions embody the ethical duties expected of a legal advocate for the Commonwealth and are held in high esteem. See, e.g., Stephens v. Commonwealth, 274 Va. 157, 161, 645 S.E.2d 276, 277 (2007) (recognizing the appropriateness of a concession by the Commonwealth); Jones v. Commonwealth, 28 Va. App. 444, 447, 506 S.E.2d 27, 29 (1998) (noting the Attorney General's "candid[] conce[ssion]" on a point of law); see also Va. R. of Prof'l Conduct 3.3 ("Candor Toward The Tribunal").

admitted.  See Rules 2:401-402; McNeir v. Greer-Hale Chinchilla Ranch, 194 Va. 623, 628-29, 74 S.E.2d 165, 169 (1953).  The weight or probative value of the evidence "'is not the criterion or test'" for admissibility.  McNeir, 194 Va. at 629, 74 S.E.2d at 169 (quoting Michie's Jurisprudence § 38, at 374).

The ability to prove bias for impeachment purposes is "a fundamental feature" of Virginia's Rules of Evidence, which expressly provide that "'[a] witness may be impeached by a showing that the witness is biased for or prejudiced against a party.'"  Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 12-6[a], at 687 (7th ed. 2012) (quoting Rule 2:610); see also Brown v. Commonwealth, 246 Va. 460, 464, 437 S.E.2d 563, 564-65 (1993).  Bias is a common-law term used to describe the relationship between a party and a witness that might lead the witness to slant his testimony, unconsciously or otherwise, for or against a party.  United States v. Abel, 469 U.S. 45, 52 (1984), cited with approval in Cousins v. Commonwealth, 56 Va. App. 257, 273-74, 693 S.E.2d 283, 290-91 (2010).  Not only the fact of possible bias but also its "source and strength" are relevant.  Abel, 469 U.S. at 54 (emphasis omitted).  A successful showing that a witness is biased "would have a tendency to make the facts to which he testified less probable in the eyes of the jury than [they] would be without such testimony."  Id. at 51.  The right to show bias is recognized as so important "that discretion should not be exercised in a fashion to truncate such inquiries."  Friend & Sinclair, supra, § 11-9, at 620 (citing Lombard v. Rohrbaugh, 262 Va. 484, 493, 551 S.E.2d 349, 353 (2001)).  In fact, the right in Virginia is so broad that if a witness denies the allegedly "biasing relationship[,] . . . motivation or interest," counsel may use additional witnesses or exhibits "to document the source or nature of the bias."  Id. § 12-6[a], at 687 (citing Rule 2:610).

Applying these principles in Banks v. Commonwealth, 16 Va. App. 959, 434 S.E.2d 681 (1993), this Court held that the trial court erred in excluding evidence of bias that the defendant

had attempted to offer against the Commonwealth's primary witness, Special Agent Barnwell. Id. at 960-61, 434 S.E.2d at 682. Barnwell, who had been involved in an undercover drug operation, reported that he had purchased cocaine from the defendant on two occasions. Id. at 962, 434 S.E.2d at 683. The defendant's theory of the case was that Barnwell himself was illegally distributing drugs and had a motive to falsely implicate the defendant to avoid detection. Id. at 964, 434 S.E.2d at 684. The defendant proffered the testimony of several witnesses, alleging they would testify that they had bought cocaine from Barnwell, observed him sell it, or received it from him in exchange for sex. Id. at 960-62, 434 S.E.2d at 682-83. On those facts, this Court held that the trial court erred in excluding the defendant's evidence, ruling it was relevant to show Barnwell's "bias or motivation to fabricate." Id. at 963-64, 434 S.E.2d at 684.

Similarly here, the appellant had the right to explore the possible bias of the police department witnesses, including Sergeant Sharp. The very short video and accompanying audio were of poor quality and perhaps, therefore, were also of limited persuasive value. Nevertheless, bias was a key part of the appellant's theory of the case, and he was entitled to have admitted any evidence not otherwise subject to exclusion that had "any logical tendency, *however slight*," to establish a fact at issue in the case, Ragland, 16 Va. App. at 918, 434 S.E.2d at 678 (emphasis added). The appellant represented that Officer Dillard is present on the video throughout the short encounter. The video shows several police officers on the sidewalk outside the Cockade Grill interacting with a man identifying himself as the appellant. Officers in the video repeatedly tell the appellant to leave. One officer describes someone as "waging a one-man campaign against the [entire Petersburg] Police Department." The video also depicts various officers telling the appellant to "[g]et out of the road" and "[not] impede [the] sidewalks either." Finally, it tracks three uniformed officers, who the appellant argues are shown in the video with their

hands on their guns, as they follow the appellant on foot while he walks away from the establishment.

The appellant proffered that Officer Dillard was the primary officer shown in the video, and the evidence established that Sergeant Sharp was supervising Dillard that night. The evidence presented at trial also showed that by the time Sharp instructed Dillard to arrest the appellant for trespassing at the headquarters building, he knew that Dillard was the officer about whom the appellant wished to make his complaint. This evidence supports the argument that Sergeant Sharp, as Dillard's supervisor, could have been concerned that the appellant's complaint about the earlier behavior of Dillard and his fellow officers toward the appellant would reflect badly on Sharp and his abilities as a supervisor, as well as on the reputation of Dillard and the Petersburg Bureau of Police as a whole. The video also contains a comment that "[h]e," presumably the appellant, "[is] waging a one-man campaign against the [entire Petersburg] Police Department." This statement provides an additional basis from which the appellant could argue to the jury that Sharp and other law enforcement witnesses were likely to be biased against him.

Despite the poor video and audio quality of the recording and its short duration, its admission in the guilt phase of trial would have provided the appellant with a basis for arguing to the jury that the Bureau of Police employees who testified against him at trial were biased against him and, consequently, might slant their testimony. See Banks, 16 Va. App. at 963-64, 434 S.E.2d at 683-84; see also Cousins, 56 Va. App. at 274-75, 693 S.E.2d at 291-92 (possible bias due to alleged gang affiliation). Therefore, the trial court should have admitted the video as probative of bias and allowed the jury to determine what, if any, weight to give it. Because we hold that the video was admissible to show bias and that the trial court erred in excluding it, we

do not address the appellant's related argument that the video was admissible to bolster the appellant's claim that he acted in good faith in refusing to leave police headquarters property.[5]

### 3. Harmless Error

Our conclusion that the trial court erred in excluding the video does not, standing alone, compel reversal of the conviction. Virginia law mandates harmless error review in all cases in which an appellate court determines that error has occurred. Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (citing Code § 8.01-678); Kirby v. Commonwealth, 50 Va. App. 691, 699, 653 S.E.2d 600, 604 (2007). Based upon the facts of this case, we are unable to conclude that the error was harmless.

The appellant's assignment of error is phrased solely in terms of the admissibility of the video, a claim of non-constitutional error. In Virginia, non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. This Court may uphold a decision on the ground that any error involved is harmless only if it can conclude, without usurping the jury's fact-finding function, "'that the error did not influence the jury[] or had but slight effect.'" Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764 (1946)); see Lavinder v. Commonwealth, 12 Va. App. 1003, 1006, 407 S.E.2d 910, 911 (1991) (*en banc*).

"[N]on-constitutional error is harmless if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison that we can conclude the error 'failed to have any "substantial influence" on the verdict.'" Schwartz v. Schwartz, 46 Va. App. 145, 159, 616 S.E.2d 59, 66 (2005) (quoting United States v. Lane, 474 U.S. 438, 450 (1986) (quoting

---

[5] We note, however, that evidence that is relevant and admissible for one purpose may be considered by the jury for any purpose unless the court gives a limiting instruction. See Rule 2:105.

Kotteakos, 328 U.S. at 765)). Where the issue involves a claim of bias, "'[the] analysis turns not on the evidence excluded . . . but on the evidence in the record, viz., [the witness'] testimony, which was not fully subject to [challenge based on bias].'" Cousins, 56 Va. App. at 276, 693 S.E.2d at 292 (second and third alterations in original) (quoting Scott v. Commonwealth, 25 Va. App. 36, 42, 486 S.E.2d 120, 123 (1997) (applying this principle in the context of improper limitations on cross-examination, a claim of constitutional error)). "'The correct inquiry is whether, assuming that the damaging potential of the [challenge based on bias] were fully realized, [we] might nonetheless say that the error was harmless [in light of the proper standard].'" Id. (quoting Maynard v. Commonwealth, 11 Va. App. 437, 448, 399 S.E.2d 635, 641 (1990) (*en banc*)). Reviewing the record in light of these principles, we are unable to conclude that the erroneous exclusion of the video was harmless.

The Commonwealth, in order to prove that the appellant was guilty of trespass in violation of Code § 18.2-119, was required to establish that the appellant had been forbidden to remain on the police headquarters property by an authorized person. The record contains sharply diverging testimony from Sergeant Sharp, the Commonwealth's witness, and Officer James, the appellant's witness, about which law enforcement officers the appellant interacted with immediately before his arrest, what they told him about his presence on headquarters property, and where the encounter took place.

Sergeant Sharp testified that he interacted with the appellant immediately prior to the appellant's arrest. Sharp stated that this interaction took place in the lobby of the headquarters building and on the patio outside. Officer James, by contrast, testified that it was he who interacted with the appellant immediately prior to the appellant's arrest. James further testified that the incident occurred in a parking lot adjacent to the police headquarters building, and James did not name Sharp as someone who was nearby during the incident.

Critically, only Sharp testified that he ordered the appellant to leave the premises. Sharp's testimony, if believed by the fact finder, was sufficient to establish that the appellant had been forbidden to remain on the premises, an element of the offense of trespass. Officer James, by contrast, testified that he merely asked the appellant to leave and specifically disclaimed ordering him to do so. James' testimony, if accepted by the jury over that of Sharp, would not have established this element of the offense. Therefore, the appellant's ability to attempt to demonstrate that Sharp might have harbored bias or animosity toward him, in an effort to persuade the jury that James' version was accurate and Sharp's version inaccurate, was critical to the appellant's defense. The video recording, if admitted, would have provided some measure of objective evidence from which the appellant could have argued this bias to the jury. The evidence in the video was not cumulative of other evidence in the record during the guilt phase because the trial court had earlier sustained the Commonwealth's objection to the appellant's effort to cross-examine Sergeant Sharp about the incident at the Cockade. Finally, this Court, upon review, cannot determine what impact the video evidence would have had on the jury's assessment of the credibility of the conflicting witness testimony. Attempting to do so would improperly usurp the jury's fact-finding function. This Court also may not conclude, therefore, "'that the error did not influence the jury[] or had but slight effect'" with regard to the appellant's right to show Sergeant Sharp's purported bias. Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764). Accordingly, the erroneous exclusion of the video recording in the guilt phase of the trial was not harmless, and we reverse the appellant's conviction and remand for a new trial if the Commonwealth be so advised.

### C. Jury Instruction Regarding the Definition of a Public Thoroughfare

The appellant also contends that the trial court erred in refusing his proffered jury instruction regarding the definition of a public thoroughfare, a type of property falling outside

- 19 -

the prohibition of Code § 18.2-119. Because this issue is likely to arise again on remand, we consider it in a limited fashion. See, e.g., Chapman v. City of Va. Beach, 252 Va. 186, 192-93, 475 S.E.2d 798, 802-03 (1996) (considering jury instruction).

The interpretation of a statute presents a question of law which we review *de novo* on appeal. Baker, 278 Va. at 660, 685 S.E.2d at 663. Whether a proffered jury instruction accurately states the law also is reviewed *de novo*. Hancock-Underwood v. Knight, 277 Va. 127, 131, 670 S.E.2d 720, 722 (2009). In determining whether a trial court erred in refusing a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction, in this case the appellant. Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002).

This Court's "responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). A litigant is entitled to jury instructions supporting his theory of the case if more than a scintilla of evidence supports that theory. Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001). However, "[n]o instruction should be given that 'incorrectly states the applicable law or which would be confusing or misleading to the jury.'" Mouberry v. Commonwealth, 39 Va. App. 576, 582, 575 S.E.2d 567, 569 (2003) (quoting Bruce v. Commonwealth, 9 Va. App. 298, 300, 387 S.E.2d 279, 280 (1990)).

Settled principles provide that Code § 18.2-119 "applies to publicly owned property *other than thoroughfares*." Johnson v. Commonwealth, 212 Va. 579, 582, 186 S.E.2d 53, 56 (1972) (emphasis added) (decided under predecessor Code § 18.1-173). Thus, if the public property at issue is a thoroughfare, neither the public at large nor its individual members may be banned, for

trespassing purposes, from traversing that property. Although the parties' evidence differed regarding where the appellant was standing when he was arrested for trespass, the trial court ruled that neither location was a thoroughfare. The appellant, by contrast, asserts that both the police headquarters patio area and parking lot fell under the definition of a public thoroughfare as a matter of law. Alternatively, he suggests that whether either of the locations at issue was a thoroughfare was a question that should have been submitted to the jury. We agree that here it was a question for the jury.

The term "thoroughfare," as used by the Supreme Court of Virginia in Johnson, "is limited to those *ways or passages* designated for *general public access*." Miller v. Commonwealth, 10 Va. App. 472, 475, 393 S.E.2d 431, 433 (1990) (emphases added). Included in the definition of thoroughfare, and therefore excluded from the statute's coverage, are "public streets." Id. at 474-75 & n.3, 393 S.E.2d at 432-33 & n.3 (citing Price v. Commonwealth, 209 Va. 383, 387, 164 S.E.2d 676, 679 (1968) (analyzing former Code § 18.1-365, which proscribed burning a cross "on the property of another," language considered by the Court to be "similar to former Code § 18.1-173," predecessor to Code § 18.2-119)). Also included in the definition of thoroughfare and excluded from the statute's coverage are driveways and walkways open to the public on a state college campus. Id. at 474-75, 393 S.E.2d at 432 (citing Miller v. Harless, 153 Va. 228, 243, 149 S.E. 619, 624 (1929)).

The Supreme Court of Virginia has excluded from the definition of a thoroughfare, by contrast, an administration building on a state college campus, holding that such a building, although public, was not a thoroughfare "designated for *general* public access." Id. at 474-75, 393 S.E.2d at 432-33 (emphasis added) (discussing Johnson, 212 Va. at 581-82, 186 S.E.2d at 55-56); see id. at 475, 393 S.E.2d at 433 (holding that an alley on housing authority property, which had been "vacated" by ordinance and placed under the control of the police department for

- 21 -

the purpose of trespass enforcement, was not a thoroughfare open to "general public access");

see also Hemmati v. United States, 564 A.2d 739, 742 (D.C. 1989) (holding that an individual

had no right to remain in a senator's office because "'[t]here must be a limit to individual

argument [of] . . . matters if government is to go on'" (quoting Bi-Metallic Inv. Co. v. State Bd.

of Equalization, 239 U.S. 441, 445 (1915))); State v. Occhino, 572 N.W.2d 316, 317-19 (Minn.

Ct. App. 1997) (upholding a conviction for trespass where the defendant lawfully entered the

desk area of a police station and received answers to several questions but then became "unruly

and disruptive" and refused to leave).

We hold that the question of whether the appellant, at the time of his arrest, was upon a

way or passage designated for general public access or was, instead, on property that was public

but was nevertheless subject to restrictions on access was a question for the jury. To the extent,

however, that the appellant's proffered jury instruction defined the headquarters building of the

Petersburg Bureau of Police as a "publically owned facility" and stated that "[a] person is not

guilty of trespass if he is within any area designated for general public access of a publically

owned facility," we conclude that the instruction was confusing and apt to mislead the jury. The

instruction, as proffered, implied that one may never trespass in "a publically owned facility" and

also may never trespass "in any area designated for general public access of a publically owned

facility." To the contrary, Virginia law provides that one may trespass in public buildings and

other publicly owned facilities. See Johnson, 212 Va. at 581-82, 186 S.E.2d at 55-56. Logically,

therefore, one may also trespass on the ways and passages providing public access to those

public buildings if those ways and passages, like the buildings to which they lead, are not

"designated for *general* public access," Miller, 10 Va. App. at 475, 393 S.E.2d at 433 (emphasis

added).

In sum, whether the particular means of ingress to and egress from the particular public building at issue here was a way or passage designated for general public access was a question for the jury on the facts of this case. Nevertheless, the trial court did not err in refusing to give the appellant's proffered instruction because it was not a proper statement of the law.[6]

### III. CONCLUSION

We hold that the evidence was sufficient to prove that an authorized person barred the appellant from the headquarters property. However, we also conclude that the trial court erred in excluding the video recording and, further, that this error was not harmless. Finally, we conclude that whether the appellant was on a public thoroughfare was a question for the jury on the facts of this case. Thus, we reverse the appellant's conviction and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

Reversed and remanded.

---

[6] The appellant does not contend that the court had an affirmative duty to correct the instruction. See Commonwealth v. Jerman, 263 Va. 88, 92-94, 556 S.E.2d 754, 756-57 (2002). Because courts do not issue advisory opinions, we do not consider this issue. See Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998).