Present: Goodwyn, Mims, Powell, Kelsey, McCullough, and Chafin, JJ., and Russell, S.J.

CLINARD GARY LAMBERT

v. Record No. 190439

COMMONWEALTH OF VIRGINIA

OPINION BY
SENIOR JUSTICE CHARLES S. RUSSELL
APRIL 9, 2020

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal arises from convictions for aggravated involuntary manslaughter in violation of Code § 18.2-36.1 and driving while intoxicated in violation of Code § 18.2-266. It presents questions whether the Commonwealth presented evidence sufficient to support jury verdicts finding that the defendant had self-administered intoxicants that impaired his ability to drive safely. For the reasons explained below, we conclude that the evidence before the jury, and the inferences reasonably deducible therefrom, was sufficient to support a finding beyond a reasonable doubt that Lambert had, prior to the accident, self-administered drugs that impaired his ability to drive safely. Accordingly, we will affirm the judgment of the Court of Appeals.

FACTS AND PROCEEDINGS

In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial. On March 1, 2015, Donna Turner was driving her Chevrolet Cavalier eastbound, crossing "Big A" Mountain in Russell County. She was accompanied, in the front passenger seat, by Forrest Ramey. At the same time, the defendant, Clinard Gary Lambert, was driving a pickup truck westbound, approaching her on the same road. The defendant crossed the centerline, entered the eastbound lane and continued until he collided with the guardrail to his left. He scraped along the guardrail for about forty feet before coming to a stop.

Donna Turner, coming around a curve, saw the truck ahead, swerved to her left to avoid it, but was unable to avert a collision. She suffered injuries but the main force of the impact was

to the passenger side of her car. Forrest Ramey, her passenger, later died as a result of the blunt force injuries he sustained.

Several witnesses soon appeared at the scene. Claude Musick was driving eastbound ahead of the Turner Chevrolet. He heard the crash behind him. In his rear-view mirror, he saw Lambert's truck against the guardrail, headed in the wrong direction. He turned around, returned to the scene and called 911.

Next, an eastbound car driven by Tammy Brown, with Andrew Duncan as her passenger, arrived at the scene. They had been too far behind to see the accident but stopped to give assistance. Duncan assisted Lambert in climbing out of his truck on its passenger side. Donna Turner remained in her car, trying unsuccessfully to revive Ramey. Lambert stood beside the truck and appeared to be "dazed" and "wobbly on his feet." His face was bleeding profusely. He was not seen to eat, drink, or take any medication.

Greta Morrison, an Emergency Medical Technician and a nursing supervisor at the Russell County Medical Center, responded to the scene. Treating Lambert for his facial injuries, she noted that his speech was slurred but that he was oriented and could answer questions. She suspected that "there was more to" the slurred speech than just this apparent facial trauma. When she asked him whether he had taken any drugs or alcohol, he denied that he had. She suggested to a police officer who had arrived at the scene that a blood sample should be taken from Lambert. No medications were given to Lambert at the scene or during his subsequent transportation to the hospital by emergency personnel.

Two Virginia State Troopers responded to the scene. Lambert told Trooper Osborne that he had been driving his truck but did not know what had happened. He appeared sleepy and was leaning on the guardrail for support but denied consuming any drugs or alcohol. Upon being

2

asked a second time, however, Lambert admitted that he had just come back from the local methadone treatment center where he received a "treatment of methadone."

Lambert was transported to the Holston Valley Hospital in Kingsport, Tennessee. The police obtained a search warrant for a sample of his blood for analysis. The resulting certificate of analysis confirmed the presence of methadone and drugs commonly known as Valium and Xanax in Lambert's blood.

Lambert was indicted in the Circuit Court of Russell County for aggravated involuntary manslaughter and driving while intoxicated. The case proceeded to a jury trial. The Commonwealth presented evidence to support the facts outlined above. In addition, Dr. James Kuhlman, Jr., a forensic toxicologist, testified that the levels of methadone and Xanax in Lambert's blood were "significant," had depressant effects that could be "additive" and "very dangerous" in combination, causing drowsiness, dizziness, lethargy, slowed hand-eye coordination, slurred speech and altered balance. He concluded that the drug levels in Lambert's blood were sufficient to have impaired his ability to drive safely.

At the close of the Commonwealth's evidence, Lambert moved to strike it on the ground, among others, that the Commonwealth had failed to prove beyond a reasonable doubt that the drugs in Lambert's blood were self-administered. The trial court denied the motion then and again when it was renewed at the conclusion of the trial. The jury found Lambert guilty on both charges and sentenced him to seven years' incarceration on the charge of aggravated involuntary manslaughter and a fine of $1,500 on the charge of driving while intoxicated. The court entered final judgment in accordance with the jury verdicts.

Lambert appealed his convictions to the Court of Appeals, which granted and considered his assignments of error. In a published opinion, *Lambert v. Commonwealth*, 70 Va. App. 54 (2019), the Court of Appeals affirmed his convictions. We awarded Lambert an appeal limited

3

to three assignments of error relating solely to the question whether the drugs found in Lambert's blood had been self-administered.

ANALYSIS

The statutes under which Lambert was charged provide, in pertinent part, as follows:

> It shall be unlawful for any person to drive or operate any motor vehicle . . . (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle . . . safely.

Code § 18.2-266.

> Any person who, as a result of driving under the influence in violation of clause (ii), (iii), or (iv) of § 18.2-266 . . . unintentionally causes the death of another person, shall be guilty of involuntary manslaughter.

Code § 18.2-36.1(A).

Lambert contended in the Court of Appeals that our decision in *Jackson v. Commonwealth,* 274 Va. 630 (2007), precludes a finding that the drugs found in his blood were "self-administered." The Court of Appeals determined that *Jackson* was inapposite, and we agree. *Jackson* was a case devoted entirely to statutory construction. There, we construed Code § 18.3-266 to require the Commonwealth to prove self-administration as an element of the crime, regardless of the intoxicating substance involved. *Jackson*, 274 Va. at 634. There, the Commonwealth contended that the phrase "any narcotic drug" in Code § 18.2-266 made proof of self-administration unnecessary. *Id.* at 633-34. We disagreed and reversed the conviction. *Id.* at 634-35. The present case, by contrast, presents only a question of the sufficiency of the evidence to prove self-administration.

On appeal, an appellate court is required to consider the evidence and all inferences fairly deducible from it in the light most favorable to the Commonwealth, the prevailing party at trial. *Perry v. Commonwealth*, 280 Va. 572, 578 (2010). The relevant issue on appeal is, "upon

4

review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (internal quotation marks omitted).

The evidence concerning the presence of intoxicants in Lambert's blood, sufficient to impair his ability to drive safely, was undisputed. When separately asked by Nurse Morrison and Trooper Osborne whether he had taken any drugs or alcohol, he initially denied that he had done so. Later, he admitted to the trooper that he had just received methadone at a methadone treatment clinic. The trial court held, and the Court of Appeals agreed, that the methadone treatment clinic was a part of a voluntary program and that Lambert had agreed to ingest methadone by his voluntary participation in the program. There was no evidence as to how the other drugs had found their way into Lambert's blood, but the jury was entitled to draw the inference that he had initially lied about consuming any drugs out of his consciousness of guilt and a desire to conceal it. *See Jones v. Commonwealth*, 279 Va. 52, 57-58 (2010).

## CONCLUSION

We conclude that the evidence before the jury, and the inferences reasonably deducible therefrom, was sufficient to support a finding beyond a reasonable doubt that Lambert had, prior to the accident, self-administered drugs that impaired his ability to drive safely. Accordingly, we will affirm the judgment of the Court of Appeals.

*Affirmed.*