COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, Beales and Lorish
Argued at Richmond, Virginia


ANTHONY JOHNNY DAVENPORT

                                                        MEMORANDUM OPINION* BY
v.       Record No. 1300-22-2                   JUDGE ROBERT J. HUMPHREYS
                                                          DECEMBER 12, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUISA COUNTY
Timothy K. Sanner, Judge

Peter A. Jenkins (Jenkins & Jenkins, on brief), for appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, Anthony Davenport was convicted of first-degree murder, use of a

firearm in the commission of a felony, and concealing a dead body. On appeal, he argues that

the circuit court erred by allowing certain expert testimony that relied on facts not in evidence,

and "by denying defense counsel the opportunity to cross-examine" a witness "about materially

false statements made under oath before a federal court."

                                    BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below]." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). This

standard requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

On June 22, 2019, in response to a citizen's report, law enforcement officers discovered Terrell Bailey's decomposed body in a ditch alongside a roadway in Louisa County. After some investigation, Detective Stanton determined where Bailey had been living and executed a search warrant of the residence, which was in Powhatan. Located behind the house was a Ford Taurus sedan registered to Davenport. Inside the vehicle, sitting on the front passenger seat, was a pair of pliers and "part of the skirting from the bottom part of th[e] seat." The two bolts that attach the seat to the chassis in the front of the seat were missing; a bolt in the back of the seat was loose. A bottle of cleaning solution was in the floorboard of the front passenger seat. Detective Stanton also collected pieces of mail that were wedged next to the seat belt holder in the front passenger seat—these pieces of paper had red stains on them. In the trunk of the car was a glove with a red stain. Inside the house, detectives found a box of ammunition in the attic and unspent ammunition rounds on the floor in Davenport's bathroom.

Other testimony established that in early 2019, Davenport and another man named Charles Tice moved in with Stephen Shaw, the owner of the Powhatan residence. Davenport invited Bailey to stay as a guest at the house in late May or early June 2019. Initially, Bailey shared a room with Davenport, but then Davenport said Bailey was stealing his stuff, so Tice let Bailey stay in his room. Tice testified that on June 9, Davenport accused Tice of stealing his money and marijuana and beat him with a baseball bat and his fists. The next day Davenport told Tice that, "if [Tice] had told anybody [about the assault] he was going to do the same thing to them that he did to [Tice]." Tice reported the incident to the sheriff's office and indicated that Bailey was a witness to the assault. Tice moved out of the Powhatan residence, and on June 18

- 2 -

he collected his belongings from the house. At that time Davenport apologized to Tice and told him that "he had the wrong person" and that he thought it was Bailey who was stealing from him. Also on June 18, Davenport told Shaw that he believed Bailey was stealing from him and he wanted Bailey to move out. Shaw told Davenport that Bailey "was his houseguest and if he wanted him to leave the house that it was up to him." Davenport told Shaw that "he was going to take care of it."

Later that night, after Shaw went to bed, he overheard Bailey ask Davenport why he had to leave. Davenport said, "it's just time for you to go," and "get your stuff." Shortly thereafter they left the house. The next morning, Davenport drove Shaw to a mechanic shop in his Ford Taurus. The front passenger seat was wet. Davenport told Shaw that he left the window down in the night and it rained on the seat. Shaw and Tice both testified that they did not own firearms at the time of Bailey's murder.

An autopsy revealed that Bailey died from a single gunshot wound to his chest. The gunshot entered Bailey's chest on the left and ended at the abdomen—"the trajectory was from left to right, front to back, and downwards." DNA analysis proved it was Bailey's blood that stained the pieces of mail and glove found in Davenport's car.

As part of the investigation into Bailey's death, the police obtained cell phone records for Bailey and Davenport, which Federal Bureau of Investigation Special Agent D'Errico reviewed. The Commonwealth offered Agent D'Errico as an expert in historical cell site analysis based on his training and experience in historical cell site analysis. Davenport raised a hearsay objection to Agent D'Errico's testimony as to any information he obtained from cell phone carriers and other FBI team members pertaining to "time offsets" used to interpret the cell phone data in this case. Agent D'Errico explained that he analyzed the cell phone records, including both "call

detail records" and "per call measurement data,"[1] to create a cell-site history of the approximate locations of the cell phones. The cell phone records, or "raw data," had been obtained by law enforcement, stipulated to by counsel, and were not introduced into evidence. Agent D'Errico testified that he applied time offsets to the per call measurement data to adjust for inconsistencies within the call detail records he observed based on his training and experience and that the inconsistences result from cellular providers storing some of their data according to other time zones. He stated, "Sometimes those time offsets need to be adjusted, and in this case, I spent many hours conducting the analysis on this case to determine and confirm what the correct time offsets should be for this." The circuit court overruled Davenport's objection and found Agent D'Errico was testifying from his own experience and abilities, and he deduced the information the Commonwealth sought to offer into evidence from his own examinations.

Agent D'Errico analyzed the movement of Davenport's phone from June 9, 2019, through June 26, 2019. The report showed movement of both Davenport's and Bailey's phones on the night of June 18, 2019, from their shared residence in Powhatan to the location of Bailey's dead body in Louisa County. The records show the cell phones were in the area of the crime scene about 11:20 p.m. Davenport's phone data indicated travel away from the crime scene while Bailey's phone data did not. For the period analyzed, there is no other instance where Davenport's cell phone was in Louisa County.

Investigation of Davenport's cell phone also showed that Davenport texted someone at 8:46 p.m. on June 18, asking for a place to crash "just for tonight." On the evening of June 20,

---

[1] Agent D'Errico explained that "call detail records" show calls and text messages going back and forth, whereas the "per call measurement data" provides additional, more frequent information about the cell phone, such as "when [the] phone[] change[s] towers" or "other check-ins that th[e] phone has with the cellular network." In this case, the call detail record from Sprint stated that voice calls were presented in "eastern time zone" and text messages were presented in "central time zone." However, he noticed the per call measurement data required an offset of five hours to be consistent with the call detail records.

Davenport searched the internet for "terrel bailey" and "terrell bailey." On June 22, he left Richmond for New York via Amtrak. On June 24, he texted someone asking, "how much would it cost[] to tow my car from Powhatan[?]" Searches deleted from Davenport's phone include "how to find out if there's a warrant for your arrest," and "anthony johnny davenport."

The Commonwealth called Michael Satterfield as a witness. Prior to Satterfield taking the stand, the Commonwealth objected to evidence it expected Davenport's counsel to use to impeach Satterfield's credibility. Davenport had obtained a document from the Middle District of North Carolina showing that a federal judge found that Satterfield made materially false statements under oath during his sentencing hearing for an unrelated criminal matter. The circuit court was unconvinced that this was proper impeachment evidence, stating that he was not aware of any authority that a "judge's finding that a witness is not credible and explicitly testified falsely under oath" is proper impeachment evidence. Defense counsel stated, "I can certainly tie it in today because I can ask Mr. Satterfield if he's ever made any false statements under oath and if he says, no, well then —." The circuit court interrupted and disagreed with counsel, but stated there were ample grounds to impeach Satterfield otherwise, noting his thirty-seven felony convictions.

Satterfield testified that he had shared a jail cell with Davenport after his arrest for killing Bailey. To Satterfield, Davenport admitted killing Bailey, explaining that he believed Bailey had been stealing from him. Davenport further told Satterfield that he "took [Bailey's body] to another county and dumped him on a dirt road somewhere." During cross-examination, Davenport impeached Satterfield with his extensive criminal record including crimes of moral turpitude and felony convictions. Satterfield also affirmed that he had pending charges for bank robbery and possessing a stolen vehicle.

The jury found Davenport guilty of first-degree murder, use of a firearm in the commission of a felony, and concealing a dead body. Davenport appeals.

ANALYSIS

I. Expert Analysis of Cell Data

Davenport argues that the circuit court erred by allowing Agent D'Errico "to rely on facts that were not presented as evidence in rendering an expert opinion." "'The admission of expert testimony is committed to the sound discretion of the trial judge,' and the appellate court will not reverse that court's decision unless it 'has abused its discretion.'" *McDaniel v. Commonwealth*, 73 Va. App. 299, 308 (2021) (quoting *Brown v. Corbin*, 244 Va. 528, 531 (1992)). This "deferential standard" means that "a 'trial judge's ruling will not be reversed simply because an appellate court disagrees.'" *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). "Only in those cases in which 'reasonable jurists could not differ' does the record support the conclusion that an abuse of discretion occurred." *McDaniel*, 73 Va. App. at 308 (quoting *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016)). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Minh Duy Du*, 292 Va. at 564 (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)).

"Determining whether an adequate foundation has been laid for the admission of an expert opinion is an exercise of the trial court's discretion, to be made in light of all the testimony produced." *Smith v. Commonwealth*, 265 Va. 250, 254 (2003). "Generally, an expert witness in Virginia has not been permitted to base his opinion on facts not in evidence." *Simpson v. Commonwealth*, 227 Va. 557, 565 (1984); *see also Sanders v. Commonwealth*, 282 Va. 154, 159 n.1 (2011) (testimony "lack[s] a proper foundation" if an expert has based his

opinion on facts not in evidence). Instead, "an 'expert may give an opinion based upon his own knowledge of facts disclosed in his testimony or he may give an opinion based upon facts in evidence assumed in a hypothetical question.'" *Simpson*, 227 Va. at 565 (quoting *Walrod v. Matthews*, 210 Va. 382, 388 (1969)).

On appeal, Davenport argues that Agent D'Errico based his opinion that Davenport's and Bailey's cell phones were in the same area at the same time on facts not in evidence.[2] Specifically, he asserts that the circuit court improperly concluded that Agent D'Errico's application of time offsets to the cell records was "the product of his individual efforts and analysis." Davenport argues that Agent D'Errico based the time offset analysis on information he received from the cell phone providers and his fellow team members of the cellular analysis survey team ("CAST"), and because no witness from the cell phone providers nor other members from the CAST testified, his testimony relied on improper hearsay.

Agent D'Errico testified that he received the cell phone data from the carriers and that the data linked the phones with specific locations tied to cell phone towers. Using the data, Agent

---

[2] To the extent Davenport argues that even though he stipulated to the cell phone records, because the records were not admitted into evidence, Agent D'Errico improperly relied on them during his testimony, we find Davenport failed to present this argument to the circuit court where he only objected to the testimony concerning the time offsets Agent D'Errico applied to the records.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). If a party fails to timely and specifically object, he waives his argument on appeal. *Arrington v. Commonwealth*, 53 Va. App. 635, 641 (2009). Thus, we find that Davenport waived this argument and do not consider it.

D'Errico plotted a map and discovered that "it required time offsets." He explained that a time offset is "an adjustment to the records" and typically results from the use of different time zones in recording the data. Agent D'Errico "spent many hours conducting the analysis on this case to determine and confirm what the correct time offsets should be for this." He testified that in his experience, the time offset often requires adjusting the time by five hours, as in this case. He confirmed that the time offsets he used were corroborated by the call detail records.

The record supports the circuit court's conclusion that Agent D'Errico testified from "his own analysis, his own experience and abilities," rather than relying on inadmissible hearsay. We find no abuse of discretion in the circuit court's decision to allow Agent D'Errico's testimony to include the time offsets he applied to the cell phone data.

## II. Unadjudicated Perjury for Impeachment of Witness

Davenport asserts that the circuit court "erred by denying defense counsel the opportunity to cross-examine" Satterfield "about materially false statements made under oath before a federal court."[3] Davenport proffered that he planned to ask Satterfield if he has ever lied under oath. He did not proffer Satterfield's expected answer. He argues the circuit court did not allow him to continue his argument for why he should be able to cross-examine Satterfield with the unadjudicated perjury.

We seek to decide cases before us "on the best and narrowest ground available." *Luginbyhl v. Commonwealth*, 48 Va. App. 58, 64 (2006) (en banc) (quoting *Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)).

---

[3] "Virginia Rule of Evidence 2:607(a) provides that 'the credibility of a witness may be impeached by any party other than the one calling the witness, with any proof that is relevant to the witness's credibility.'" *Lambert v. Commonwealth*, 70 Va. App. 54, 61 (2019). Rule 2:607(a) lists proper forms of impeachment evidence, including "evidence of prior unadjudicated perjury, as provided in Rule 2:608(d)." Virginia Rule of Evidence 2:608(d) provides, "If the trial judge makes a threshold determination that a reasonable probability of falsity exists, any witness may be questioned about prior specific instances of unadjudicated perjury."

Thus, instead of deciding whether the circuit court erred in this evidentiary ruling, we assume without deciding that it did err, and review the record for harmless error. *Id.* (applying "assuming but not deciding" basis in harmless error analysis). "A non-constitutional error is harmless when it 'plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" *Anderson v. Commonwealth*, 282 Va. 457, 466 (2011) (quoting *Rose v. Commonwealth*, 270 Va. 3, 12 (2005)). "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and judgment should stand." *Id.* at 467 (quoting *Rose*, 270 Va. at 12). But "if 'the alleged error substantially influenced' the finder-of-fact, the error is not harmless." *Id.* (quoting *Clay v. Commonwealth*, 262 Va. 253, 259 (2001)).

Davenport complains that he was denied the opportunity to impeach Satterfield's credibility with a specific instance of unadjudicated perjury. However, Satterfield's credibility was substantially impeached with his lengthy criminal record including thirty-seven felonies and crimes involving moral turpitude.

Moreover, setting aside Satterfield's testimony altogether, the evidence is overwhelming that Davenport was the perpetrator of the crimes against Bailey. Tice provided evidence that Davenport was disgruntled with Bailey over suspected stealing, which was corroborated by Shaw's testimony. *See Van Dyke v. Commonwealth*, 196 Va. 1039, 1046 (1955) ("[W]hile proof of motive is not necessary, it is a factor to be considered bearing only upon the question as to whether or not the accused committed the crime."). In addition to motive, Davenport's car contained items with Bailey's blood on them, including a glove in the trunk of the car. The bottle of cleaning solution and the wet front passenger seat indicated that Davenport had tried to clean the car. Partial disassembly of the front passenger seat and tools on the seat indicate that he also tried to remove the front passenger seat. Thus, Davenport tried to hide evidence of the

crimes.  Moreover, his text message asking for the cost of towing his car from Powhatan indicates that he considered totally removing his car from the residence so authorities would not find it.

Shaw testified that Davenport and Bailey left the Powhatan residence together on the night of June 18.  Cell phone records show that Davenport's and Bailey's phones traveled together on that night from their shared residence to the crime scene where Bailey's body was found and that only Davenport's phone traveled away from the crime scene.  Davenport's deleted internet searches support an inference that he wondered whether Bailey had been found and that he was concerned about whether there was a warrant out for his arrest for the crimes. Davenport's trip to New York soon after the murder is evidence of flight and circumstantial evidence of guilt.  *Ricks v. Commonwealth*, 39 Va. App. 330, 335 (2002).  Considering the overwhelming evidence of Davenport's guilt and other impeachment evidence used to impugn Satterfield, we can say with assurance that any error in excluding impeachment evidence of unadjudicated perjury had only slight or no effect on the jury.

For the foregoing reasons, we find no abuse of discretion with the circuit court's evidentiary rulings.  We therefore affirm the circuit court's judgment.

*Affirmed.*