# COURT OF APPEALS OF VIRGINIA

---

**Record No. 0030-25-1**

---

RYAN SAUNDERS

v.

COMMONWEALTH OF VIRGINIA

---

Present: Judges Athey, Friedman and Callins

Argued at Williamsburg, Virginia

Opinion Issued April 14, 2026[*]

---

**FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON**
Tonya Henderson-Stith, Judge

Charles E. Haden for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

---

**MEMORANDUM OPINION BY**
**JUDGE CLIFFORD L. ATHEY, JR.**

A jury empaneled in the Circuit Court of the City of Hampton ("trial court") convicted Ryan Saunders ("Saunders") of possession of a firearm by a convicted felon.[2] The trial court sentenced Saunders to five years' incarceration. On appeal, Saunders assigns error to the trial court for denying his motion to strike, contending that the evidence was insufficient to prove that he possessed a firearm. We disagree and affirm the conviction.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Pursuant to a plea agreement, Saunders subsequently pleaded guilty to both discharging a firearm into an occupied dwelling and discharging a firearm in a public place and not causing injury. Neither of these convictions was appealed. The Commonwealth also nolle prossed a charge of using a firearm in the commission of a felony.

## I. Background[3]

On January 3, 2024, Saunders was indicted for possessing a firearm after "having previously been convicted of a violent felony," in violation of Code § 18.2-308.2. The matter proceeded to trial on November 25, 2024. Saunders pleaded not guilty and elected to be tried by a jury.

During the jury trial, Michael Hopewell ("Hopewell") testified that during August of 2023, Hopewell resided on the second floor of a two-story home located in Hampton. He further testified that he rented out part of the first floor to Melissa Schornak ("Schornak"), who was Saunders's girlfriend that summer.

Hopewell further explained to the jury that around midnight between August 20, 2023, and August 21, 2023, he heard Saunders arguing downstairs with Schornak, and she was "saying, stop, stop, stop." Hopewell then went down the stairs to the first floor and ordered Saunders to leave. Saunders left the house after finishing the argument with Schornak. Hopewell locked the first-floor doors leading outside immediately after Saunders left the house.

Hopewell next testified that as he began climbing the stairs to the second floor, he heard what sounded like tires popping outside in front of the house in the location where Schornak parked her car.[4] From his upstairs bedroom, Hopewell saw Saunders through the window entering Saunders's black Mercedes truck, which was parked approximately 20 feet from the

---

[3] We state the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

[4] Hopewell explained that Schornak parked in front of the house and he parked behind the house.

upstairs window. Between the front porch light and streetlights, it was bright enough for Hopewell to identify Saunders. Hopewell then explained to the jury that Saunders's vehicle had been parked outside the front of the home "[a]ll day," that he did not see anyone else enter the vehicle before Saunders did so, and that Saunders appeared to be the driver and sole occupant of the vehicle.

Hopewell then observed Saunders drive the Mercedes truck away before "[h]e stopped a couple of houses down." Saunders then exited the truck and walked back toward the house before retreating to his vehicle and starting to drive away again. Next, he witnessed Saunders execute a U-turn and "start[] coming back past the house the opposite way." Hopewell explained that, out of concern for his own tires being popped, he "went down the hallway, like three steps over, and . . . went into [his] children's bedroom and . . . looked out that window because that[] [was] where [his] cars were." Hopewell observed Saunders's Mercedes truck "speeding back towards [his] house." When the truck was passing back by his home, Hopewell simultaneously saw a flash coming from the truck and heard a "blasting noise."[5] Hopewell immediately called 911.

After law enforcement arrived at his home, Hopewell went outside and found a hole in the exterior of his home about 12 feet above the ground, over his porch. Hopewell further testified that the hole had not been there prior to the events of that night. Hopewell then explained to the jury that he subsequently hired a contractor "to find out where [the hole] went or whatever it was." After Hopewell and the contractor "pulled the siding down," it became apparent that "there was a hole 45 degrees from that hole that kept going." Upstairs, they searched for the terminus of the exterior hole and discovered a hole in the closet of Hopewell's

---

[5] Hopewell confirmed that he had heard fireworks, power tools "going off," and "a tire blowing out" before and indicated that the "blasting noise" he heard was dissimilar.

children's bedroom. The contractor also identified an object "sitting on the floor," which he "picked . . . up with a plastic glove." Hopewell subsequently delivered the object to Detective McKinney of the Hampton Police Division.

During cross-examination, Hopewell explained that the hole extended upward from the exterior of his home into his children's upstairs bedroom closet. He also acknowledged that Saunders left the home "peacefully" and that he "didn't see him slash the tires" on Schornak's vehicle. Hopewell also confirmed that he lost sight of Saunders's vehicle for approximately 30 seconds, the time it took Hopewell to move "from the front of the house to the back of the house." He also estimated that Saunders's vehicle was approximately 40 yards from the home when it passed back by the home, and he agreed that he did not see a firearm or the driver's face—he could only "see silhouettes."

Detective McKinney then testified that he arrived at Hopewell's home in response to the 911 call. Detective McKinney testified that when he arrived, he saw a vehicle in front of the house with four flat tires. Detective McKinney opined that he "saw a bullet hole to the residence." Based on his training and experience, Detective McKinney further opined that the object that Hopewell had provided to him was a bullet that had been fired from a gun. Before resting, the Commonwealth also introduced in evidence Saunders's prior felony conviction for unlawful wounding.

At the close of the Commonwealth's evidence, Saunders moved to strike the charge of possession of a firearm by a convicted felon. Saunders contended that Hopewell neither saw him with a firearm nor saw his face in the vehicle after losing sight of the vehicle for 30 seconds, so the evidence was insufficient to establish that *he* possessed a firearm that night. The trial court denied the motion and Saunders's renewed motion to strike.

Thereafter, the trial court instructed the jury, the parties presented closing arguments, and the jury retired to deliberate. The jury then returned its verdict, finding Saunders guilty of possession of a firearm as a convicted felon. The trial court sentenced Saunders to five years' incarceration. Saunders appealed.

## II. ANALYSIS

### A. *Standard of Review*

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). Hence, on appeal, "[t]he only 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

### B. *The trial court did not err by denying Saunders's motion to strike.*

Saunders contends that the trial court erred by denying his motion to strike because the Commonwealth "failed to exclude the reasonable hypothesis of innocence that the unidentified person in the vehicle who discharged the weapon might have been someone other than [him]." He supports this contention by pointing to Hopewell's testimony that he lost sight of the vehicle for nearly 30 seconds, never saw a firearm during the incident, and could see only "silhouettes"

in the vehicle because it was dark.  In sum, Saunders suggests that his conviction rests on "conjecture and speculation."  We disagree.

Under Code § 18.2-308.2(A), it is unlawful for a convicted felon "to knowingly and intentionally possess . . . any firearm."  "To prove a possession offense, the Commonwealth must 'produce evidence sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that the defendant intentionally and consciously possessed the contraband with knowledge of its nature and character.'"  *Commonwealth v. Wilkerson*, 304 Va. 92, 100 (2025) (quoting *Garrick*, 303 Va. at 183).[6]

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt."  *Shahan v. Commonwealth*, 76 Va. App. 246, 258 (2022) (quoting *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013)).  Identity, like any other element of an offense, may be proved by direct or circumstantial evidence.  *See Lambert v. Commonwealth*, 70 Va. App. 54, 65 (2019), *aff'd*, 298 Va. 510 (2020).  So, on review, "[o]ur inquiry does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'"  *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)).  Moreover, we do not view circumstantial evidence "'in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty."  *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).  "Where, as here, the Commonwealth relies wholly

---

[6] Saunders does not argue that the Commonwealth's evidence failed to prove possession. Indeed, at oral argument, counsel for Saunders conceded that a person who discharges a firearm possesses the firearm.  *See Ballard v. Commonwealth*, 82 Va. App. 404, 412 (2024) ("[A] person must possess a firearm in order to use it.").

on circumstantial evidence to carry its burden of proof beyond a reasonable doubt, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence.'" *Moseley*, 293 Va. at 463 (quoting *Commonwealth v. Smith*, 259 Va. 780, 783 (2000)). "[T]he evidence as a whole must be 'sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Rams*, 70 Va. App. at 27 (quoting *Dowden v. Commonwealth*, 260 Va. 459, 468 (2000)).

"The 'reasonable hypothesis of innocence' concept is also well defined. The Commonwealth need exclude only reasonable hypotheses of innocence that 'flow from the evidence itself, and not from the imagination' of the defendant." *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (quoting *Pijor*, 294 Va. at 512). "The rejection of a hypothesis of innocence 'is binding on appeal unless plainly wrong.'" *Ervin v. Commonwealth*, 57 Va. App. 495, 519 (2011) (en banc) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 13 (1997)). In other words, "the factfinder's rejection of a hypothesis of innocence 'cannot be overturned as arbitrary unless no rational factfinder would have come to that conclusion.'" *Id.* at 520 (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 573 (2009) (en banc)). And "[i]n conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)).

Here, the evidence established that Hopewell intervened in an argument between Saunders and his girlfriend, Schornak, ordering the former to leave the home and locking the door behind him. While returning to his upstairs bedroom, Hopewell heard all four of the tires on Schornak's vehicle being slashed. From his upstairs bedroom window, Hopewell saw Saunders enter his vehicle and drive away. Hopewell saw no one else enter the vehicle, and Saunders appeared to be the vehicle's sole occupant. Hopewell monitored Saunders's travel

through his upstairs windows and briefly lost sight of Saunders's vehicle only when he moved from one room to another. When Saunders's vehicle passed by the home, Hopewell saw a flash and simultaneously heard a "blasting noise." Hopewell subsequently discovered a hole in the exterior of his residence, which had not been there prior to that night, that extended upwards at a 45-degree angle, terminating in his children's bedroom closet. A fired bullet was discovered on the floor nearby.

The evidence thus reflected that, while driving by, an occupant of Saunders's truck possessing a firearm shot a bullet into Hopewell's home. To be sure, Hopewell could not identify the actual shooter—at the time the gun was fired, he could only see "silhouettes." But other than Hopewell's use of the plural form of the word "silhouette," there is no evidence in the record that supports a factual finding that any individual other than Saunders was present in Saunders's truck that night. Saunders's vehicle was parked outside of Hopewell's home for most of the day. Aided by streetlights and a porch light, Hopewell identified Saunders as he entered his Mercedes truck. He was thus able to conclude that Saunders was the sole occupant of the vehicle. Hopewell then monitored Saunders's movements, losing sight of Saunders's vehicle for no more than 30 seconds as Hopewell traversed the hallway connecting his upstairs bedroom and his children's bedroom. The jury was entitled to consider the veracity of Hopewell's testimony. *See Raspberry*, 71 Va. App. at 29. And even though there may be "'some evidence to support' [Saunders's] hypothesis of innocence," we cannot say that the jury was plainly wrong to reject his hypothesis given the dearth of evidence supporting a finding that there was a second occupant of the vehicle and the existence of ample evidence supporting a finding that Saunders was the only occupant of the vehicle. *Ervin*, 57 Va. App. at 519 (quoting *Hudson*, 265 Va. at 513); *accord Wilkerson*, 304 Va. at 102 ("[T]he question for our review on appeal is not whether there was 'some evidence' to support a defendant's hypothesis of innocence, because the totality

of the circumstantial evidence may allow a factfinder to reject an asserted hypothesis of innocence as unreasonable." (quoting *Moseley*, 293 Va. at 464)).

After considering Saunders's hypothesis of innocence that someone else shot into Hopewell's home, the jury rejected it. On this record, we cannot say that the jury's rejection was arbitrary or plainly wrong. *See Ervin*, 57 Va. App. at 519-20. Considering the circumstances, a rational factfinder could conclude that Saunders discharged a firearm from his vehicle and, in the process, possessed a firearm. Hence, the trial court did not err by denying Saunders's motion to strike because the evidence was sufficient to support his conviction for possession of a firearm by a convicted felon.

## III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*